## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| MESSERET TERZNEH, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | No. 2:21-cv-02228-TLP-tmp |
| v. | ) | |
| | ) | JURY DEMAND |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION and JACOB TIGERT, | ) | |
| | ) | |
|     Defendants. | ) | |

## ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR INJUNCTIVE RELIEF

Plaintiff moves for an emergency temporary restraining order and for injunctive relief.[1] (ECF No. 32.)  Defendant Jacob Tigert has responded.  (ECF No. 33.)  Defendant Federal National Mortgage Association ("Fannie Mae") has not.  Having reviewed the record, the Court finds that a hearing is unnecessary to resolve this motion.  *See* LR 7.2(d); *see also France v. Chippewa Cnty.*, No. 2:20-CV-248, 2021 WL 1572833, at *1 (W.D. Mich. Apr. 22, 2021).  For the reasons below, the Court **DENIES** the motion.

## BACKGROUND

Plaintiff Messeret Terzneh sued Defendant Fannie Mae and Defendant Tigert (collectively "Defendants"), asserting claims related to the sale and possession of the house located at 8878 Forest Glade Cove, Germantown, Tennessee 38139 (the "Property").  (ECF No.

---

[1] If Plaintiff seeks other injunctive relief in her original complaint or proposed amendment, the Court will address those requests when resolving the pending motions to dismiss (ECF Nos. 10 & 25) and motion to amend (ECF No. 28).

1.)  Plaintiff's husband, Fasil Kebede, has brought three earlier lawsuits related to the foreclosure and sale of the same property.[2]  *See Kebede v. SunTrust Mortgage, Inc.*, No. 2:11-cv-2700-SHL-dkv, 2014 WL 11515884 (W.D. Tenn. Dec. 30, 2014) ("Kebede I"); *Kebede v. SunTrust Mortgage, Inc.*, 2:16-cv-2227-SHL-dkv (W.D. Tenn. Sept. 27, 2016) ("Kebede II"); *Kebede v. SunTrust Mortgage, Inc.*, 2:17-cv-2684-SHL-dkv (W.D. Tenn. June 11, 2018) ("Kebede III"). Fannie Mae also sued Kebede in state court seeking possession of the Property.  *Fed. Nat'l Mortg. Ass'n v. Kebede*, No. W2019-00227-COA-R3-CV, 2020 WL 7060019 (Tenn. Ct. App. Dec. 2, 2020) ("Kebede IV").  For more background, the Court will summarize the other cases about the Property.[3]

## I.     Kebede I

In May 2008, Kebede obtained a mortgage loan to buy the Property, after which SunTrust Mortgage, Inc ("SunTrust") took over the servicing rights of the loan.  *Kebede I*, 2014 WL 11515884, at *2.  Later, Kebede fell behind on his mortgage payments, and SunTrust started its first attempt to foreclose on the Property in June 2011.  *Id.*  Kebede sued SunTrust in July 2011, asserting claims for wrongful foreclosure and slander of title, and seeking to quiet title.  *Id.* at *2–3.  At first, Kebede also alleged fraud, but abandoned it in his amended complaint.  *Id.*  In December 2014, the court dismissed Kebede's complaint with prejudice for failure to state a claim.  *Id.* at *1, *7.  The Sixth Circuit affirmed.  *Kebede v. SunTrust Mortgage, Inc.*, 612 F. App'x 839 (6th Cir. 2015).

---

[2] The pending motion to amend seeks to add Kebede as a plaintiff.  (ECF No. 28-1 at PageID 209.)

[3] The Court takes judicial notice of the prior decisions about the Property and considers them incorporated by reference into the complaint.  *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

II.     **Kebede II**

After the dismissal of *Kebede I*, SunTrust sent another notice of foreclosure for the

Property to Kebede (and Plaintiff) in February 2016.  *Kebede II*, 2:16-cv-2227-SHL-dkv, ECF

No. 32 at 3 (W.D. Tenn. Sept. 27, 2016).  In March 2016, Kebede sued a second time seeking to

enjoin SunTrust from holding the foreclosure sale, alleging fraud and unclean hands.  *Id.*  In

September 2016, the court dismissed Kebede's complaint because res judicata barred his claims.

*Id.* at 6–8.  The court held in its order that "any claims relating to enjoining the foreclosure of the

Property are part of a 'series of transactions' occurring throughout the litigation of *Kebede I* that

either were, or should have been, brought in the previous litigation."  *Id.* at 8.

III.    **Kebede III**

After the dismissal of *Kebede II*, SunTrust sent Kebede a notice advising him that it

would hold a foreclosure sale of the Property in February 2017.  *Kebede III*, 2:17-cv-2684-SHL-

dkv, ECF No. 30 at 1, 4 (W.D. Tenn. June 11, 2018).  SunTrust also published the advertisement

in a newspaper of general circulation.  *Id.* at 4.  After the Property sold at the foreclosure sale,

Kebede filed yet another lawsuit in state court against SunTrust, this time adding Fannie Mae[4] as

a defendant, alleging that the notice SunTrust used to advertise the foreclosure sale was

defective.  *Id.* at 5.  Kebede sought to set aside the sale and enjoin SunTrust and Fannie Mae

from bringing a forcible entry and detainer action.  *Id.*  The court also noted that Kebede seemed

to assert claims for retaliatory foreclosure and fraud.  *Id.* at 1, 5.  SunTrust and Fannie Mae

removed the case to federal court in September 2017.  *Id.*  Kebede moved to remand, and

SunTrust and Fannie Mae moved for sanctions and to dismiss.  *Id.* at 2.

---

[4] According to Plaintiff's complaint, SunTrust conveyed its interest in the Property to Fannie
Mae in February 2017.  (ECF No. 1, at PageID 3.)

The court denied Kebede's motion to remand, finding that subject-matter jurisdiction based on diversity existed. *Id.* at 6. The court also granted SunTrust and Fannie Mae costs and attorneys' fees under 28 U.S.C. § 1927 related to the motion, because Kebede lacked a reasonable basis for seeking remand. *Id.* at 7. Lastly, the court granted the motions to dismiss filed by SunTrust and Fannie Mae, finding that Kebede did not plead any facts showing noncompliance with Tennessee's notice of foreclosure requirements or provide any factual assertions to support his fraud claim. *Id.* at 9, 11. Finally, the court noted that "to the extent [Kebede's] fraud claim relates back to either [*Kebede I* or *Kebede II*], it is barred by res judicata." *Id.* at 12 n.10.

## IV.    Kebede IV

In May 2017, Fannie Mae brought a forcible entry and detainer action against Kebede in the Shelby County General Sessions Court. *Kebede IV*, 2020 WL 7060019, at *1. That court ruled in Fannie Mae's favor and issued a detainer warrant on August 20, 2018. *Id.* Kebede then appealed to the Circuit Court of Shelby County, and Fannie Mae moved for summary judgment. *Id.* at *1–2. In responding to the motion for summary judgment, Kebede submitted "correspondence from August 2018 concerning purchasing the home and an August 15, 2018 letter from a mortgage company stating that [Messeret Terzneh] met the financial requirements for a $610,000.00 loan; the letter noted, however, that it did not constitute final approval of a loan." *Id.* at *2 (footnote omitted).

The Shelby County Circuit Court granted summary judgment for Fannie Mae, finding "that the foreclosure was valid, that the Substitute Trustee's Deed granted title to Fannie Mae, and that Mr. Kebede was unlawfully in possession of the property." *Id.* That court then issued a

4

writ of possession in favor of Fannie Mae, and Kebede appealed on February 6, 2019.[5]  *Id.*  The Court of Appeals of Tennessee affirmed in December 2020, stating that "the undisputed material facts demonstrate that Fannie Mae is entitled to summary judgment on its claim of possession to the subject property."  *Id.* at *6.  On April 8, 2021, the Supreme Court of Tennessee denied Kebede's application for permission to appeal.  *Fed. Nat'l Mortg. Ass'n v. Kebede*, No. W2019-00227-SC-R11-CV (Tenn. Apr. 8, 2021).  Ms. Terzneh sued here five days later.

## V.     The Present Lawsuit

In a last-ditch effort to stop Defendants from taking possession of the Property, Plaintiff sued here, less than a week after the Supreme Court of Tennessee denied Kebede's application to appeal in *Kebede IV*.  (ECF No. 1.)  Beyond describing the litigation addressed above, the complaint has sparse factual allegations.  Plaintiff alleges that in August 2018, Defendant Fannie Mae received "offers from [Plaintiff] to buy the Forest Glade Property" and "proof of funds and a financing letter."  (*Id.* at PageID 6.)  Plaintiff alleges that Defendant Fannie Mae ignored her offers and sold the Property to Defendant Tigert for about $526,000.  (*Id.*)  According to the complaint, "Fannie Mae sold the Forest Glade property . . . on January 25, 2019 to Defendant Tigert for Five Hundred Twenty Six thousand fifty dollars, almost one hundred thousand dollars less than the African Americans who had lived there and paid a second mortgage for ten years."  (*Id.*)  Plaintiff alleges civil conspiracy, race discrimination under 42 U.S.C. § 2000d, race discrimination under equal protection, race discrimination under 42 U.S.C. § 1983, and RICO violations under 18 U.S.C. §§ 1962(b)–(d).  (*Id.* at PageID 10–13, 16, 21.)  Plaintiff asserts all claims against both Defendant Fannie Mae and Defendant Tigert.  (*Id.*)  Plaintiff seeks money

---

[5] According to the complaint here, in March 2019, Kebede obtained an order allowing him to stay the writ of possession by posting a $500,000 bond, which he did.  (ECF No. 1 at PageID 6.)

damages and to enjoin Defendants from "attempting to evict or in any way remove [Plaintiff] from the real property." (*Id.* at PageID 26.)

Plaintiff moved to amend her complaint on August 26, 2021.[6] (ECF No. 28.) Plaintiff attached to her motion a proposed amended complaint, which seeks to add Kebede as a plaintiff.[7] (ECF No. 28-1.) The proposed amendment adds few factual allegations to the original complaint. But unlike the original complaint, the proposed amendment alleges that Defendant Tigert is white. (*Id.* at PageID 218.) The proposed amendment also abandons the RICO claims and adds claims for race discrimination under 42 U.S.C. §§ 1981, 1982 against both Defendant Fannie Mae and Defendant Tigert.[8] (*Id.* at PageID 217, 219.) The proposed amendment also claims civil conspiracy under 42 U.S.C. § 1985(3). (*Id.* at PageID 226.) The request for relief is unchanged in the proposed amendment. (*Id.* at PageID 239.)

Plaintiff now moves for a temporary restraining order ("TRO") and preliminary injunction. (ECF No. 32.) In support of her motion, Plaintiff states that Defendant Tigert has moved in Shelby County Circuit Court to remand the case to the General Sessions Court for issuance of a writ of possession based on the Supreme Court of Tennessee denying Kebede's application to appeal. (*Id.* at Page ID 256; 32-1 at PageID 269.) Plaintiff attached to her motion an affidavit signed by Plaintiff and Kebede stating that they have "made numerous offers to purchase [the Property] from [Defendant] Tigert for the appraised value and [Defendant] Tigert

---

[6] Plaintiff's motion to amend is pending.

[7] Had Kebede sued from the outset here, the court clerk likely would have assigned this case to Judge Lipman who presided over *Kebede I–III* and dismissed them.

[8] In the section of the proposed amendment alleging a claim under 42 U.S.C. § 1982, Plaintiff includes quotations from the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and case law discussing housing discrimination and disparate impact claims. (ECF No. 28-1 at PageID 220–23.) It is unclear from the face of the complaint whether Plaintiff intends to assert a standalone FHA claim and against which Defendants such a claim would apply.

has never made a counter offer." (ECF No. 32-2 at PageID 272–73.) Defendant Tigert has responded, stating that he "has no intention of applying for a writ of possession until such time as after this Court rules on Plaintiffs [sic] request for a TRO or Injunctive relief and assuming the request is denied." (ECF No. 34 at PageID 278.)

## **LEGAL STANDARDS**

The purpose of a TRO is to preserve the status quo pending a hearing on a preliminary injunction. *See Erard v. Mich. Secy. of State*, 905 F.Supp.2d 782, 791 (E.D. Mich. 2012) ("An ex parte TRO is only appropriate where the applicant would face irreparable harm so immediate that it would be improper to wait until after a preliminary injunction hearing to enjoin the non-movant's conduct."); *see also Wilkins v. Daniels*, 913 F.Supp.2d 517, 532 (S.D. Ohio 2012) ("A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo."). "Courts considering a requested preliminary injunction must consider four factors: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *Gale v. O'Donohue*, 751 F. App'x 876, 881 (6th Cir. 2018) (quoting *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001)).

Courts use the same factors when considering a motion for a TRO. *See Stein v. Thomas*, 672 F. App'x 565, 569 (6th Cir. 2016). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). The party seeking preliminary injunctive relief bears the "burden of proving that the circumstances clearly demand it." *Id.* (citing *Leary v.*

7

*Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)).  Now the Court will apply these factors to this case.

## ANALYSIS

The Court construes Plaintiff's motion as requesting a preliminary injunction and a TRO pending a hearing on that request.  But the motion is unclear about what conduct Plaintiff seeks to enjoin or restrain.  Plaintiff's original complaint and proposed amendment ask the Court to enjoin Defendants from "attempting to evict or in any way remove [Plaintiff] from the real property."  (ECF No. 1 at PageID 26; 28-1 at PageID 239.)  But Plaintiff's request for a TRO and injunctive relief stems solely from the fact that Defendant Tigert moved in state court for remand to the General Sessions Court for issuance of a writ of possession.  (ECF No. 32 at PageID 256; 32-1 at PageID 269.)  And so Plaintiff seeks either to enjoin Defendant Tigert from seeking a writ of possession in state court or to enjoin the state court from issuing one.  But Plaintiff's failure to describe the specific relief she is requesting provides a reason to deny her motion for a TRO.  *See Berg v. Knox Cnty.*, 3:20-CV-00019-DCLC, 2020 WL 7078374, at *2 (E.D. Tenn. Sept. 28, 2020) (denying a motion for a TRO where "Plaintiffs are not specific as to what conduct they are seeking to enjoin" and "leave[] the Court having to guess at the specific conduct they seek to restrain.").  For Plaintiff's benefit, the court will construe her motion as requesting to enjoin Defendant Tigert from seeking a writ of possession in state court.

Here, the Court need only look at whether an immediate and irreparable harm is present.[9] *See Cunningham v. First Class Vacations, Inc.*, No. 3:16-CV-2285, 2019 WL 1306214, at *1

_____

[9] Plaintiff's argument about her likelihood of success on the merits pertains only to the FHA. (ECF No. 32 at PageID 259.)  But there is no claim under the FHA validly before the court.  The original complaint never mentions the FHA.  And the proposed amended complaint—not the legally operative complaint here—seemingly lacks a standalone claim under the FHA either. True enough, Plaintiff cites and quotes the FHA and related case law in the proposed amended

(M.D. Tenn. Jan. 11, 2019) ("When determining whether to issue a TRO, a threat of immediate, irreparable harm must be present.") (citing Fed. R. Civ. P. 65(b)(1)(A)).  Neither Plaintiff's motion nor the attached affidavit set forth any facts showing that an immediate and irreparable injury will occur without a TRO.  The affidavit attached to Plaintiff's motion states only that Plaintiff and Kebede have "made numerous offers to purchase [the Property] from [Defendant] Tigert for the appraised value and [Defendant] Tigert has never made a counter offer."  (ECF No. 32-2 at PageID 272–73.)

Plaintiff's affidavit does not describe any potential harm.  And Plaintiff's motion similarly describes no specific harm, let alone an immediate and irreparable one.  Plaintiff merely states that "irreparable harm is nearly always presumed in cases such as these."  (ECF No. 32 at PageID 264.)  This falls short of establishing any potential harm to Plaintiff absent a TRO.  Plaintiff therefore has not carried her burden and is not entitled to a TRO.  *See Cunningham*, 2019 WL 1306214, at *1; *see also Overstreet*, 305 F.3d at 573.

## **CONCLUSION**

For the reasons explained above, the Court **DENIES** Plaintiff's motion for a TRO.

**SO ORDERED**, this 9th day of September, 2021.

s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

complaint under the heading for her claim of race discrimination under 42 U.S.C. § 1982.  (ECF No. 28-1 at PageID 220–23.)  But the amended complaint is unclear about whether Plaintiff intended this to be a standalone claim or to which Defendants such a claim would apply.